## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KIMBERLEE BANNING, MARK BRUSER and 2604 MAGAZINE PROPERTIES, LLC | * * * * | CIVIL ACTION NO.: 2:23-cv-07261 |
| versus | * * | JUDGE LANCE M. AFRICK |
| JEFFERY CARRERAS, JAIMEE CARRERAS and 3226 MAGAZINE PROPERTIES, LLC | * * * * | MAGISTRATE MICHAEL NORTH SECTION I(5) |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## FIRST AMENDED COMPLAINT FOR TRADEMARK INFRINGEMENT

Plaintiffs Kimberlee Banning ("Banning"), Mark Bruser ("Bruser") and 2604 Magazine Properties, LLC ("Magazine Properties") (collectively "Plaintiffs") state the following for their First Amended Complaint against Defendants Jeffery Carreras, Jaimee Carreras and 3226 Magazine Properties, LLC (collectively "Defendants"):

## INTRODUCTION

Bruser owns the real estate and commercial building located at 2604 Magazine Street, New Orleans, LA. In 2007, Bruser and Banning opened a bar and restaurant business at 2604 Magazine Street which they called THE IRISH GARDEN CLUB. Banning formed Magazine Properties to own and operate the bar and restaurant business. The business eventually re-branded as TRACEY'S ORIGINAL IRISH CHANNEL BAR (often referred to simply as TRACEY'S) in 2010. As the only user of the TRACEY'S trademarks, Magazine Properties is the owner of all trademark rights in the TRACEY'S and TRACEY'S ORIGINAL IRISH CHANNEL BAR names.

Banning was the sole member of Magazine Properties through the 2010 re-branding. After the 2010 re-branding, Banning transferred her membership interest in Magazine Properties to Defendant Jeffery Carreras for him to manage the bar; contemporaneously, Magazine Properties

1

entered into a new commercial lease for the bar. The agreement through Banning transferred her membership interest to Carreras includes a reversionary provision that reverts the Magazine Properties equity back to Banning when the commercial real estate lease at 2604 Magazine Street ends.

Unfortunately, Jeff Carreras drove Magazine Properties to insolvency by sacking it with insurmountable debt. Unable to overcome the debt, the Carrerases caused Magazine Properties to default on the lease by not paying rent and insurance. The lease termination triggered reversion of the membership interest in Magazine Properties back to Banning. Banning is the rightful sole member of Magazine Properties with full power to direct the company to enforce its rights.

However, the Carrerases intend to open a new bar and restaurant just six (6) blocks away at 3226 Magazine Street, and they plan to call it TRACEY'S. Defendants are infringing on the TRACEY'S trademark owned by Magazine Properties by using the trademark in connection with the new bar and restaurant they intend to open. To further this infringement, Defendants caused Magazine Properties to enter into a fraudulent transaction in an attempt to assign the TRACEY'S trademarks to Jaimee Carreras. Jaimee Carreras also engaged in a series of sham filings with the Louisiana Secretary of State and United States Patent and Trademark Office fraudulently asserting ownership of the TRACEY'S trademarks.  Defendants' use of the TRACEY'S brand and trademarks at the 3226 Magazine Street location without Plaintiffs' consent constitutes trademark infringement. Prior to filing this action, Plaintiffs asked Defendants to cease infringing on the TRACEY'S trademarks, but Defendants refused.

Plaintiffs have been forced to commence this lawsuit to confirm that Banning owns Magazine Properties or, in the alternative, to force Jeff Carreras to sign the documents to confirm

the transfer of Magazine Properties back to Banning, to confirm that Magazine Properties owns the TRACEY'S trademarks, and to stop Defendants from infringing the TRACEY'S trademarks.

## PARTIES

1. Plaintiff Banning is a resident of New Orleans, Louisiana, and is the wife of Plaintiff Bruser.

2. Plaintiff Bruser is a resident of New Orleans, Louisiana, and is the husband of Banning.

3. Plaintiff 2604 Magazine Properties, LLC is a Louisiana limited liability company which operates in New Orleans, Louisiana.

4. Defendants Jeffery S. Carreras and Jaimee Carreras are married and are residents of New Orleans, Louisiana.

5. Defendant 3226 Magazine Properties, LLC is a Louisiana limited liability company which operates in New Orleans, Louisiana.

## JURISDICTION & VENUE

6. This Court has subject matter jurisdiction over Magazine Properties' trademark infringement claim because that claim is brought pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) because it involves substantial claims arising under the federal Lanham Act, 15 U.S.C. § 1051, *et seq*.

7. This Court has subject matter jurisdiction over Magazine Properties' declaratory judgment claims because an actual controversy exists between the parties under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202, for the relief requested of declaratory judgment with respect to the trademark rights.

8. This Court may exercise supplemental jurisdiction over Plaintiffs' remaining claims pursuant to 28 U.S.C. § 1367(a) because those claims arise from the same transactions or

occurrences and implicate the same questions of fact and related questions of law.  There is a common nucleus of operative facts such that the adjudication of Plaintiffs' state claims with their federal claims furthers the interest of judicial economy.

9.  Venue in the Eastern District of Louisiana is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

**FACTUAL BACKGROUND**

A.  **Initial Business of 2604 Magazine Properties, LLC**

10. Banning formed Magazine Properties on April 26, 2007, for the purpose of operating a bar and restaurant business at 2604 Magazine Street, New Orleans, LA 70130.

11. Banning was the sole member of Magazine Properties.

12. In 2007, Bruser owned the real estate at 2604 Magazine Street, and he is still the owner today.

13. In 2007, the bar and restaurant business at 2604 Magazine Street was called THE IRISH GARDEN CLUB.

14. All the permits and licenses necessary to operate the business were obtained by and owned by Magazine Properties.

B.  **The Parties Rebrand the Bar to TRACEY'S**

*Jeff Carreras Starts Running the Business*

15. In the summer of 2010, Banning, Bruser and Defendant Jeff Carreras entered into discussions for Jeff Carreras to take over and manage the operation of the bar business at 2604 Magazine Street.

16. At the time, Jeff Carreras was operating the restaurant and bar named PARASOL'S at 2533 Constance Street, New Orleans, LA 70130. The owner of the real estate where Parasol's was operating sold the real estate to a third party, forcing Jeff Carreras out of PARASOL'S.

17. The parties eventually agreed that Jeff Carreras would take over and manage the operation of the bar business at 2604 Magazine Street by September 1, 2010, or sometime thereabouts.

18. Sometime before September 1, 2010, Banning, Bruser, and the Carrerases collectively agreed to change the name of the business to TRACEY'S ORIGINAL IRISH CHANNEL BAR, which is often shortened to TRACEY'S.

19. On or about September 1, 2010, the parties reopened the business at 2604 Magazine Street as TRACEY'S ORIGINAL IRISH CHANNEL BAR, often referred to as TRACEY'S. Jeff Carreras began operating TRACEY'S at that time.

20. Although Jeff Carreras was the manager, the business was operated through Magazine Properties at all times.

### The Parties Formalize Carreras's Transition

21. The parties eventually documented formal business terms for Jeff Carreras's transition. Banning temporarily transferred to Carreras her membership interest in Magazine Properties on November 9, 2010. The parties signed a Membership Interest Agreement which governed the temporary transfer.

22. The purpose of Banning's sale to Carreras was to allow the ongoing operation of the bar without the need for Carreras to form a new business entity or obtain necessary permits and licenses. Through this structure, Carreras received a turnkey business – one that was ready for immediate operation.

23. Contemporaneous with Banning's transfer of interest in Magazine Properties, Carreras also caused Magazine Properties to enter into a commercial real estate lease with Bruser.

24. In Section 3(b) of the Membership Interest Agreement, the membership interest in Magazine Properties would revert back to Banning thirty (30) days after the lease at 2604 Magazine Street ends. The Membership Interest Agreement requires that the transfer back to Banning be on the same terms and conditions as the original sale from Banning to Jeff Carreras. Section 3(b) states:

> Carreras agrees that within thirty (30) days of expiration of the lease for 2604 Magazine St., he will sell back to Banning the membership interest in 2604 Magazine Properties, L.L.C. which Carreras purchased under this agreement upon the same terms and conditions. The sale price shall be the sum of $500.00. All movable assets of 2604 Magazine Properties, L.L.C. acquired during the term of the lease shall be excluded from the sale back to Banning, including specifically all furniture, fixtures, equipment, inventory and other movables located on the leased premises.

25. Through the reversionary terms of the Membership Interest Agreement, the parties intended that, if Carreras decided to leave, Magazine Properties would be able to continue to seamlessly operate the bar at 2604 Magazine Street without the need to form a new business entity, obtain necessary permits and licenses or develop a new brand. Through this structure, Banning was to receive a turnkey business – one that was ready for immediate operation.

26. The transfer back to Banning of the membership interest would allow for a smooth transition because Magazine Properties owned the trademarks, licenses and permits.

27. The Membership Interest Agreement does not grant Jeff Carreras discretion to avoid or refuse the reversion.

28. Bruser, Magazine Properties and Jeff Carreras have extended their lease relationship twice. The most recent lease was signed on November 29, 2022, and it the same key terms which have governed their relationship.

29.   Jeff Carreras signed the 2022 Lease on Magazine Properties' behalf. The 2022 Lease commenced on November 1, 2022, and had a three-year initial term.

30. The 2022 Lease required Magazine Properties to pay rent on the first day of each month, subject to a ten percent (10%) late fee. The 2022 Lease also required Magazine Properties to pay all expenses related to the leased premises, including but not limited to taxes, insurance, utilities, and all other expenses of operation of the leased premises, including maintenance of the property.

31. The 2022 Lease further stated that Magazine Properties was responsible for reimbursing Bruser for one half (½) the payment of ad valorem taxes on real property (including real estate, and other ad valorem taxes as well as public improvement assessments and all other governmental impositions and charges on the real property of every kind and nature) for the real property at 2600-2604 Magazine Street, New Orleans, LA. Magazine Properties was required to pay property taxes for the first floor, and Bruser was to pay property taxes for the second floor.

32. The 2022 Lease also required Magazine Properties to procure and maintain specific insurance policies at its expense.

**C.   Magazine Properties Owns the TRACEY'S Trademarks**

*Magazine Properties Owns the TRACEY'S Trademarks Because it is the Only One That Used Them in Commerce*

33. TRACEY'S is a popular sports bar and restaurant. It has been a neighborhood staple in the Irish Channel area for over thirteen (13) years.

34. Magazine Properties established its trademark rights in the TRACEY'S and TRACEY'S ORIGINAL IRISH CHANNEL BAR trademarks when it began operating TRACEY'S on or about September 1, 2010.

35. Magazine Properties held all the permits and licenses necessary to operating the bar and restaurant business before, during and after Jeff Carreras began operating the bar. Jeff Carreras merely stepped into the established business and began operating it under the TRACEY'S brand.

36. Magazine Properties owns the trademark rights in the TRACEY'S trademarks because it is the only one that used the marks in commerce.

37. No one else used the TRACEY'S trademarks in commerce.

38. Magazine Properties has continued to operate the business at 2604 Magazine Street under the TRACEY'S ORIGINAL IRISH CHANNEL BAR, or simply TRACEY'S, brand name since 2010 and continues to be the rightful owner of all rights and interests in the TRACEY'S trademarks.

39. Magazine Properties was the employer for all TRACEY'S employees.

40. All point-of-sale transactions were made to Magazine Properties in cash or through its merchant credit card account. All revenues were deposited into Magazine Properties' bank account.

41. Magazine Properties paid for all bills, including rent, utilities, vendor payments, employee compensation, and any maintenance expenses the business incurred.

42. Simply put, the daily business was run by Magazine Properties, which Jeff Carreras managed.

43. Magazine Properties still holds all the permits and licenses necessary to operate Tracey's.

### *Defendants Acknowledge that Magazine Properties Owns the TRACEY'S Trademarks*

44. Defendants represented in federal and state trademark applications that Magazine Properties owned the TRACEY'S trademarks.

45. Magazine Properties, while under the direction and control of Jeff Carreras, filed a federal trademark application to register the TRACEY'S design logo on April 16, 2020. Jeff Carreras

authorized that federal trademark application, which identified Magazine Properties as the trademark owner. For reasons unknown to Plaintiffs, Magazine Properties abandoned that trademark application on January 19, 2021. However, that trademark application establishes and confirms Carreras' understanding that Magazine Properties owns the TRACEY'S trademarks.

46. On February 8, 2021, Magazine Properties, while under the direction and control of Jeff Carreras, filed with the Louisiana Secretary of State a state trade name application for a composite mark consisting of the words "TRACEY'S ORIGINAL IRISH CHANNEL BAR" and "EST. 1949 NOLA" along with a design logo. Jeff Carreras authorized that state trade name application, which identified Magazine Properties as the trademark owner. The Louisiana Secretary of State accepted the application and recorded registration of the trademark in Book #73-6876.

47. Jeff and Jaimee Carreras recently testified under oath that Magazine Properties owned the TRACEY'S trademarks as of April 16, 2020, and February 8, 2021.

48. On or around November 7, 2023, Defendants caused Magazine Properties, to attempt to assign its rights in the TRACEY'S trademarks to Jaimee Carreras. In that purported trademark assignment, which was a fraudulent transaction as explained below, Jeff Carreras signing on behalf of Magazine Properties, represented and warranted that Magazine Properties "has unencumbered control of all right, title and interest in and to" the TRACEY'S trademarks.

49. Jeff and Jaimee Carreras recently testified under oath that Magazine Properties owned the TRACEY'S trademarks as of November 7, 2023.

50. Therefore, it is undisputed that Magazine Properties owned the TRACEY'S trademarks from September 1, 2010, through the Carrerases' attempted assignment on November 7, 2023.

**D. <u>Jeff Carreras Drives Magazine Properties to Insolvency</u>**

51. Magazine Properties, under Jeff Carreras's control and at Jeff Carreras's direction, has failed to pay the monthly rent and other amounts due under the 2022 Lease.

52. Jeff Carreras caused Magazine Properties to fail to pay the following monthly rent:

    a.  August 2023;

    b.  September 2023;

    c.  October 2023;

    d.  November 2023; and

    e.  December 2023.

53. At the time of this filing, Magazine Properties owes Bruser overdue rent payments exceeding $20,000.

54. Jeff Carreras recently testified under oath that Magazine Properties owes Bruser overdue rent payments exceeding $20,000.

55. Jeff Carreras caused Magazine Properties to fail to make insurance payments to Bruser exceeding $22,000.

56. Such overdue rent and insurance payments accrued before November 7, 2023.

57. Pursuant to the 2022 Lease, Magazine Properties also owes Bruser penalties, late fees, and interest which accrued before November 7, 2023, and other remedial damages explained below.

58. Article 7, Section 2 of the 2022 Lease provides remedies for an event of default. It states:

> Lessor shall have the right, in addition to all other remedies Lessor may have at law or in equity, at Lessor's option, to (a) terminate this Lease, in which there shall be due to Lessor liquidated damages, a sum equal to the lesser of the amount of the guaranteed rent for six (6) months, or reimbursement of all of Lessee's actual costs incurred in reentering, renovating and re-letting said premises; or (b) to sue for the rents in intervals or as the same accrues.

59. Magazine Properties also owes third parties for various debts and liabilities, including the Sewerage & Water Board of New Orleans, and Entergy.

60. Jeff Carreras recently testified under oath that Entergy claims Magazine Properties owes approximately $20,000, and the Sewerage & Water Board of New Orleans claims Magazine Properties owes over $40,000.

61. Jeff Carreras also acknowledged under oath that Magazine Properties owes over $70,000 in unpaid business property taxes.

62. Magazine Properties had only minimal assets.

63. Jeff Carreras Magazine Properties to be insolvent as of November 7, 2023, because its total debts and liabilities far exceeded the total value of its assets.

64. Jeff Carreras recently testified under oath that Tracey's was not making money.

65. As of November 7, 2023, Magazine Properties was unable to pay its creditors as debts became due.

**E.  The Carrerases Default and Attempt to Steal the Tracey's Trademarks**

66. With Magazine Properties facing insurmountable, compounding debt, the Carrerases broke the 2022 Lease, vacated 2604 Magazine Street, left Magazine Properties submerged in debt, and refused to pay Bruser overdue rent.

67. But that was not enough. The Carrerases then attempted to steal the TRACEY'S trademarks to use with a new bar and restaurant they plan to open six (6) blocks down Magazine Street. In essence, the Carrerases decided to abandon their responsibilities to Plaintiffs and become a direct competitor six (6) blocks away using Plaintiffs' trademarks.

***The Carrerases Default and Break the 2022 Lease; Magazine Properties Reverts to Banning***

68. Jeff Carreras decided in October 2023 that he would break the lease and he would open a new bar and restaurant using the TRACEY'S trademarks at 3226 Magazine Street. Jeff Carreras recently testified under oath that his decision was based in part on the fact that under his management, Magazine Properties had become insolvent.

69. On November 10, 2023, Bruser notified Carreras in writing that Magazine Properties was in default of the terms of the 2022 Lease and had fifteen (15) days to cure the default. Carreras did not cause Magazine Properties to cure the default.

70. On December 10, 2023, Jeff Carreras vacated 2604 Magazine Street before the end of the lease term. The 2022 Lease does not allow for Magazine Properties to vacate the property prematurely.

71. Under the terms of the 2022 Lease, upon Magazine Properties' default, Bruser is entitled to receive, at his discretion, any remedy at law or to elect one of these specific remedies provided by the lease: (i) liquidated damages equal to six (6) months rent, or (ii) reimbursement of all of Bruser's costs incurred in re-letting the Property, or (iii) for the total of all rents due under the lease term as those rents accrue.

72. As a result of Carreras's actions causing Magazine Properties to default on the 2022 Lease, pursuant to the Membership Interest Agreement, one hundred percent (100%) of the membership interest in Magazine Properties has reverted back to Banning.

73. Jeff Carreras apparently believes the reversion is not perfected until he signs a document confirming transfer of the Magazine Properties membership interest back to Banning.

74. However, Jeff Carreras refuses to sign any document confirming the transfer.

75. The ownership of Magazine Properties transferred to Banning on December 10, 2023, despite Jeff Carreras's obstinate refusal to sign a document confirming the ownership transfer. Jeff Carreras may not prevent the contractually required ownership transfer by refusing to perform the ministerial task of signing a document.

### The Carrerases Attempt a Fraudulent Transfer of the TRACEY'S Trademarks to Jaimee Carreras

76. The Carrerases knew that the Membership Interest Agreement would trigger reversion of Magazine Properties to Banning. The Carrerases also knew that the TRACEY'S trademarks were the only substantial assets the company owned.

77. Therefore, in an attempt to abscond with whatever valuable assets they could, the Carrerases attempted to transfer the TRACEY'S trademarks to Jaimee Carreras to head off reversion of those assets to Banning (through ownership of Magazine Properties).

78. On or about November 7, 2023, Defendants Jeff Carreras and Jaimee Carreras caused Magazine Properties to enter into a purported, fraudulent transfer of the TRACEY'S trademarks from Magazine Properties to Jaimee Carreras.

79. The Carrerases attempted this fraudulent transfer with full knowledge of the following circumstances:

    a.  Magazine Properties owned the TRACEY'S trademarks;

    b.  Jeff Carreras had sacked Magazine Properties with insurmountable debt;

    c.  Magazine Properties had only ten thousand dollars ($10,000) in its bank account;

    d.  Magazine Properties was insolvent because its liabilities exceeded its assets and it was unable to pay creditors as debts became due;

    e.  The Carrerases had decided to break the lease at 2604 Magazine Street and abandon Magazine Properties;

f.  Ownership of Magazine Properties would soon revert to Banning pursuant to the transfer obligation which arose from the Membership Interest Agreement on November 9, 2010;

g.  When Magazine Properties reverted back to Banning, the Carrerases would no longer control use of the TRACEY'S trademarks;

h.  The TRACEY'S trademarks were Magazine Properties' only substantial asset;

i.  Defendants wanted to avoid transferring the TRACEY'S trademarks to Banning (via Magazine Properties);

j.  Bruser and Banning objected to another TRACEY'S opening; and

k.  Bruser and Banning disputed the Carrerases' claim to own the TRACEY'S trademarks.

80. According to the purported assignment, Jaimee Carreras was obligated to pay Magazine Properties one hundred dollars ($100.00) for ownership of the TRACEY'S trademarks.

81. However, Jeff and Jaimee Carreras both testified under oath that they would not sell the TRACEY'S trademarks for any amount up to and including five hundred thousand dollars ($500,000.00), which confirms they value the TRACEY'S trademarks at over five hundred thousand dollars ($500,000.00).

82. Jeff Carreras caused Magazine Properties to become further insolvent by attempting to cause Magazine Properties to transfer ownership of the TRACEY'S trademarks, which he claims are worth more than five hundred thousand dollars ($500,000.00), to his wife Jaimee Carreras for a mere one hundred dollars ($100.00).

83. The fraudulent nature of the purported trademark assignment to Jaimee Carreras cannot be more clear given the timing and circumstances.

*Jaimee Carreras Files Fraudulent Trademark Applications*

84. Jaimee Carreras advanced their fraudulent trademark scheme through a series of fraudulent filings with the State of Louisiana and the U.S. Patent and Trademark Office mere days of the purported fraudulent trademark assignment.

85. On November 10, 2023, Jaimee Carreras filed with the Louisiana Secretary of State an application to register the TRACEY'S ORIGINAL IRISH CHANNEL BAR trade name.  In Jaimee Carreras's application to register this mark, she claimed that she personally owns the mark and first used it on September 1, 2010.  Jaimee Carreras's application, and her statements in support of her application, are false and were fraudulently submitted to the Louisiana Secretary of State.

86. On November 10, 2023, Jaimee Carreras filed another application with the Louisiana Secretary of State seeking to register a service mark consisting of a logo comprising the words TRACEY'S EST. 1949 NOLA THE ORIGINAL IRISH CHANNEL BAR.  Jaimee Carreras again asserted that she personally owns the mark and first used it on September 1, 2010.  Jaimee Carreras's application, and her statements in support of her application, are false and were fraudulently submitted to the Louisiana Secretary of State.

87. On November 10, 2023, Jaimee Carreras fraudulently caused the Louisiana Secretary of State to change the ownership of the 2021 Louisiana State registration for the TRACEY'S logo from Magazine Properties (the rightful owner) to herself.

88. Also on November 10, 2023, Jaimee Carreras filed a federal trademark application to register the TRACEY'S design logo in her name. It is an intent-to-use trademark application in which Jaimee Carreras expressed her intent to use the TRACEY'S logo in connection with "Bandanas;

Hats; Sweatshirts; Caps being headwear; Clothing jackets; T-shirts; Tank-tops; Visors being headwear." Jaimee Carreras recently testified under oath that she has not sold any such items.

89. The trade name, service mark and trademark applications filed on or around November 10, 2023, by Jaimee Carreras were fraudulently filed as part of Jamiee Carreras's baseless claims of ownership the TRACEY'S trademarks.

### *Defendants Begin Infringing Magazine Properties' Rights in the TRACEY'S Trademarks*

90. Defendants also began infringing Magazine Properties exclusive rights in the TRACEY'S trademarks. Jeff Carreras has made public statements that, after prematurely vacating the property in violation of his lease, he intends to open a new TRACEY'S in the Irish Channel.

91. To effectuate this infringement, on or around October 3, 2023, Jeff and Jaimee Carreras formed a new entity, 3226 Magazine Properties, LLC, a Louisiana limited liability company. Jeff and Jaimee Carreras are officers of 3226 Magazine Properties who have each authorized, directed and participated in the infringing conduct described below. Jeff and Jaimee Carreras are personally and individually responsible, and liable, for the actions of 3226 Magazine Properties, LLC.

92. Defendants are actively advertising the new bar and restaurant using the TRACEY'S name. Defendants' use of the name TRACEY'S, or any confusingly similar derivative, constitutes infringement of Magazine Properties' exclusive trademark rights.

93. By way of example, depicted here is an image of a sign Defendants posted in a window of the building at 3226 Magazine Street announcing their intent to open a new business using the TRACEY'S ORIGINAL IRISH CHANNEL BAR name:



94. Defendants are using the TRACEY'S trademarks at their new 3226 Magazine Street location without Plaintiffs' consent.

95. Prior to commencing this litigation, Banning (as the rightful sole member of Magazine Properties), put Defendants on notice that their intent to use the TRACEY'S trademark in connection with a new restaurant and bar would constitute trademark infringement. In response, Defendants have falsely asserted that they own the rights to the TRACEY'S trademark. Defendants' ownership assertions are false and without merit.

**COUNT I: DECLARATORY JUDGMENT THAT BANNING IS THE SOLE MEMBER OF 2604 MAGAZINE PROPERTIES, LLC**

96. Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1–95 inclusive, as though fully set forth.

97. This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

98. Based on the allegations above, there is an actual and substantial controversy between parties. Defendants maintain that Jeff Carreras is the sole owner of Magazine Properties because he has refused to sign a document that transfers the membership interest in Magazine Properties

to Banning, despite the reversionary terms of the Membership Interest Agreement. Plaintiffs maintain that Banning is the sole and rightful owner of Magazine Properties because the lease terminated, which triggered reversion of the membership interest to Banning. The dispute between Magazine Properties and Defendants is substantial, definite, concrete and immediate, and not hypothetical.

99. Banning and Magazine Properties seek an Order from this Court that Banning is the sole and exclusive owner of one hundred percent (100%) of the membership interest in Magazine Properties.

100.    Banning and Magazine Properties are entitled to a declaratory judgment of their rights under 28 U.S.C. §§ 2201–02 to resolve the legal and factual questions raised by Defendants and to afford relief from the uncertainty and controversy that Defendants' assertions have precipitated.

## COUNT II: IN THE ALTERNATIVE, ORDER FOR SPECIFIC PERFORMANCE AGAINST JEFFERY CARRERAS

101.    Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1–100 inclusive, as though fully set forth.

102.    Plaintiffs assert this claim in the alternative. Should the Court find that, as Jeff Carreras asserts, some written affirmation is necessary to confirm the transfer of membership interest in Magazine Properties to Banning, then Plaintiffs ask this Court to order Jeff Carreras to cooperate with Banning sign such document(s).

103.    Jeff Carreras is obligated to sell his membership interest back to Banning for five hundred dollars ($500) pursuant to the Membership Interest Agreement because Jeff Carreras cause Magazine Properties to default on the 2022 Lease, which caused it to terminate.

104.     Banning has offered to pay Jeff Carreras five hundred dollars ($500), but Jeff Carreras declined. Banning is ready, willing and above to pay Jeff Carreras five hundred dollars ($500) today.

105.     Jeff Carreras refuses to cooperate with Banning regarding efforts to document a transfer.

106.     Banning and Magazine Properties maintain that the reversionary language in the Membership Interest Agreement is sufficient to vest Banning with the membership interest despite Jeff Carreras's obstinate refusal to sign a document which confirms the transfer.

107.     However, Defendants disagree. Jeff Carreras moved this Court to dismiss this case based on his obstinate refusal to fulfill his obligation. (Rec. Doc. 12).

108.     Jeff Carreras cannot simply refuse to sign a document and reap benefits from violating his contractual obligation to sell the membership interest back to Banning if Banning is ready, willing and able to comply with her obligation.

109.     Louisiana law authorizes this Court to order specific performance if this Court does not determine that the reversionary language of the Membership Interest Agreement has triggered reversion of the membership interest back to Banning.

110.     The principles of Louisiana contract law and equity require this Court to force Jeff Carreras to transfer his membership interest in Magazine Properties to Banning if this Court does not determine that the reversionary language of the Membership Interest Agreement has triggered reversion of the membership interest back to Banning.

111.     Banning and Magazine Properties are entitled to an order for specific performance in which this Court orders Jeff Carreras to sign the requisite documents to effect transfer of the membership interest back to Banning if this Court does not determine that the reversionary

language of the Membership Interest Agreement has triggered reversion of the membership interest back to Banning.

**COUNT III: REVOCATORY ACTION NULLIFYING TRADEMARK ASSIGNMENT**

112.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1–111 inclusive, as though fully set forth.

113.     Magazine Properties, as an obligor, is obligated to pay Bruser, as obligee, over twenty thousand dollars ($20,000.00) in unpaid rent, plus penalties, late fees and interest. Magazine Properties, as an obligor, is obligated to pay Bruser, as obligee, overdue insurance payments exceeding $22,000. Such overdue rent and insurance payments, penalties, late fees and interest accrued before November 7, 2023.

114.     On or about November 7, 2023, Defendants Jeff Carreras and Jaimee Carreras caused Magazine Properties to enter into a purported, fraudulent transfer of the TRACEY'S trademarks from Magazine Properties to Jaimee Carreras.

115.     At the time of the purported fraudulent transfer, Jeff Carreras was the sole owner of Magazine Properties, and Jeff Carreras had caused Magazine Properties to become insolvent as set forth above.

116.     Jeff Carreras caused Magazine Properties to become further insolvent by attempting to cause Magazine Properties to transfer ownership of the TRACEY'S trademarks, which he and Jaimee Carreras testified they value at more than five hundred thousand dollars ($500,000.00), to his wife Jaimee Carreras for a mere one hundred dollars ($100.00).

117.     The purported transfer of rights in the TRACEY'S trademarks was a fraudulent transfer because Magazine Properties' obligation to Bruser arose before the purported transfer, and the purported transfer caused or increased Magazine Properties' insolvency.

118.     Bruser, as obligee of Magazine Properties, has the right under La. Civ. Code art. 2036, to annul the fraudulent transfer Magazine Properties' rights in the TRACEY'S trademarks to Jaimee Carreras for a *de minimis* amount, the entire purpose of which was to steal the rights in the TRACEY'S trademarks from Magazine Properties and Banning.

119.     Bruser is entitled to an order from this Court annulling the purported, fraudulent transfer of the TRACEY'S trademarks from Magazine Properties to Jaimee Carreras dated November 7, 2023.

**COUNT IV: DECLARATORY JUDGMENT OF TRADEMARK OWNERSHIP**

120.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1–119 inclusive, as though fully set forth.

121.     This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

122.     Based on the allegations above, there is an actual and substantial controversy between plaintiff Magazine Properties and Defendants. Defendants have misrepresented that they own trademark rights in the TRACEY'S trademarks. Plaintiff Magazine Properties denies that Defendants own any rights in the TRACEY'S trademarks. Rather, Magazine Properties owns all rights in the TRACEY'S trademarks because Magazine Properties first used, and continues to use, the TRACEY'S trademarks in commerce. The dispute between Magazine Properties and Defendants is substantial, definite, concrete and immediate, and not hypothetical.

123.     Magazine Properties seeks an Order from this Court that Magazine Properties owns all exclusive trademark rights in the TRACEY'S ORIGINAL IRISH CHANNEL BAR and TRACEY'S trademarks.

124.     Through the course of conducted outlined in ¶¶44-50, the Carrerases acknowledged Magazine Properties' ownership of the TRACEY'S trademarks through November 7, 2023.

125.     The November 7, 2023, trademark assignment was a fraudulent transaction.

126.     Magazine Properties is entitled to a declaratory judgment of its rights under 28 U.S.C. §§ 2201–02 to resolve the legal and factual questions raised by Defendants and to afford relief from the uncertainty and controversy that Defendants' assertions have precipitated.

## COUNT V: FEDERAL TRADEMARK INFRINGEMENT
## ASSERTED BY MAGAZINE PROPERTIES AGAINST ALL DEFENDANTS

127.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1–126 inclusive, as though fully set forth.

128.     Magazine Properties has exclusively used the TRACEY'S trademarks in commerce since 2010. Defendants have not used the TRACEY'S trademarks in commerce. Therefore, Magazine Properties is the sole and exclusive owner of the TRACEY'S trademarks.

129.     Defendants are using the TRACEY'S trademarks without Plaintiffs' consent. Defendants have publicly disclosed their intent to use the TRACEY'S trademarks at another location. Defendants have advertised their new business as Tracey's using the TRACEY'S trademarks. Defendants posted a sign with one of the TRACEY'S trademarks at Defendants' new business location.

130.     Defendants' use of the TRACEY'S trademarks is causing confusion among prospective and actual TRACEY'S customers. Such conduct falsely indicates to consumers or the public that Defendants' products or services would originate from, be approved by, sponsored by, or licensed by or affiliated with Plaintiffs. Defendants' conduct violates Section 43(a) of Lanham Act (15 USC § 1125(a)).

131.     Defendants are likely to continue engaging in such conduct which will cause irreparable injury to Plaintiffs for which they have no remedy at law unless enjoined or restrained by the Court.

132.     Plaintiffs seek a preliminary injunction in which the Court orders Defendants to stop using the TRACEY'S trademarks.

133.     Plaintiffs seek damages to compensate them for the losses they have incurred as a result of Defendants' violation of the Lanham Act.

### COUNT VI: CANCELLATION OF STATE TRADEMARK REGISTRATIONS

134.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1–133 inclusive, as though fully set forth.

135.     As alleged above, Jaimee Carreras filed fraudulent trade name and service mark applications.

136.     La. R. S. 51:219 states that the Secretary of State shall cancel from the register any registration which a court of competent jurisdiction finds that the registrant is not the owner of the mark, that the registration was improperly granted, or that the registration was fraudulently obtained.

137.     Jaimee Carreras is not the owner of the TRACEY'S trademarks as explained herein. Rather Magazine Properties owns the TRACEY'S trademarks.

138.     Plaintiffs are entitled to an order from this Court finding that the state trade name and service mark registrations that Jaimee Carreras filed for the TRACEY'S trademarks should be cancelled pursuant to La. R. S. 51:219.

## COUNT VI: UNFAIR COMPETITION AND DECEPTIVE TRADE PRACTICES
## (LA Rev. Stat. §51:1401, *et seq.*) ASSERTED BY ALL PLAINTIFFS AGAINST ALL
## DEFENDANTS

139.    Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1–138 inclusive, as though fully set forth.

140.    This Count, arising under La. Rev. Stat. § 51:1401 *et seq.*, is for unfair methods of competition and unfair and deceptive acts or practices.

141.    Defendants' aforesaid activities comprise unfair methods of competition, and unfair and deceptive acts and practices in the conduct of trade and commerce, in violation of La. Rev. Stat. § 51:1405, and to Plaintiffs' irreparable harm.

142.    Defendants' use of the TRACEY'S trademarks with a bar and restaurant business a few blocks down the same street from the location of the original TRACEY'S has created a false impression to consumers that Defendants' bar and restaurant is the original TRACEY'S or is affiliated with the original TRACEY'S located at 2604 Magazine Street.

143.    Defendants' refusal to acknowledge that Banning owns Magazine Properties for the sole purpose of attempting to prevent Magazine Properties from enforcing its rights or pursuing its legal claims, only to establish a legal advantage against Magazine Properties, Bruser and Banning, is an unfair trade practice.

144.    In addition, Jaimee Carreras's filing of fraudulent, public trade name, trademark and service mark applications with the Louisiana Secretary of State has created a false impression to consumers that Defendants own the TRACEY'S trademarks and that Defendants' bar and restaurant is the original TRACEY'S or is at least associated with the original TRACEY'S owned by Plaintiffs.

145.     Defendants intended to create such a false impression to boost their sales by confusing the consumer base regarding the location of the actual TRACEY'S bar and restaurant. Plaintiffs certainly have been harmed due to the customer confusion Defendants caused, as the consumer base is now confused as to where the "real" TRACEY'S bar and restaurant will be located.

146.     Moreover, the Carrerases' attempt to complete the fraudulent assignment of the TRACEY'S trademarks from Magazine Properties to Jaimee Carreras for less than 0.02% of what the Carrerases testified the TRACEY'S trademarks are worth constitutes a blatant unfair trade practice. The Carrerases' attempt at the fraudulent transfer after Jeff Carreras decided to vacate the premises at 2604 Magazine Street, and during the parties' dispute, without notifying Plaintiffs was an egregious, immoral act intended to deceive Banning, Bruser and, ultimately, the consumer base.

147.     Pursuant to La. Rev. Stat. § 51:1409, Plaintiffs are entitled to recover from Defendants all actual damages sustained by Plaintiffs, including costs and attorney fees as a result of Defendants' aforesaid acts.

148.     Unless enjoined, Defendants' unfair methods of competition, and unfair and deceptive acts and practices will cause Plaintiffs further irreparable harm, and Plaintiffs are entitled to injunctive relief pursuant to, *inter alia*, La. Rev. Stat. §§ 51:1407 and 51:1408.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter a judgment:

A. Declaring that Kimberlee Banning is the sole member of 2604 Magazine Properties, LLC, or, in the alternative, ordering Jeffery Carreras to specifically perform his obligations under the Membership Interest Agreement and, specifically, complete the sale back to Kimberlee Banning of one hundred percent (100%) of the membership interest in Magazine Properties;

B. Declaring that the purported, fraudulent transfer of rights in and to the TRACEY'S ORIGINAL IRISH CHANNEL BAR and TRACEY'S trademarks from Magazine Properties to Jaimee Carreras is annulled and without effect;

C. Declaring that Magazine Properties owns exclusive rights in the TRACEY'S ORIGINAL IRISH CHANNEL BAR and TRACEY'S trademarks;

D. Ordering that the trade names, trademarks and service marks registered by the Secretary of State for the benefit of any defendant related to TRACEY'S ORIGINAL IRISH CHANNEL BAR, TRACEY'S, or any confusingly similar mark, be cancelled pursuant to La. R.S. 51:219;

E. Ordering Defendants, at their sole expense, immediately and expressly abandon all applications to register TRACEY'S ORIGINAL IRISH CHANNEL BAR, TRACEY'S, or any confusingly similar mark;

F. Ordering that Defendants, their officers, agents, employees, attorneys, privies, representatives, successors and assigns, and any and all persons in active concert or participation with or under authority from Defendants, be enjoined permanently from using the trademarks TRACEY'S ORIGINAL IRISH CHANNEL BAR, TRACEY'S, or any confusingly similar trademark;

G. Ordering Defendants to immediately cease and desist all unfair competition activities;

H. Plaintiffs be awarded attorney fees, costs and expenses pursuant to the Membership Interest Agreement, the Lanham Act, and the Louisiana Unfair Trade Practices Act; and

I. Plaintiffs be granted such other further and general relief as may be just.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial on all issues so triable.

Respectfully submitted this 20th day of February, 2024:

Respectfully Submitted:

**INTELLECTUAL PROPERTY CONSULTING, LLC**

By: /s/ Adam V. Vickers
Gregory D. Latham (T.A.) (LSBA 25955)
glatham@iplawconsulting.com
Adam V. Vickers (T.A.) (LSBA 34992)
avickers@iplawconsulting.com
400 Poydras St., Suite 1400
New Orleans, LA 70130
504-322-7166
*Attorneys for Kimberlee Banning, Mark Bruser, and 2604 Magazine Properties, LLC*

### CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2024, I caused a true and accurate copy of the foregoing to be served on all counsel and parties of record through the Court's CM/ECF electronic filing system.

/s/ Adam V. Vickers